# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **ABBOTT-NORTHWESTERN HOSPITAL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  04-795 (ESH)** |
| | ) | |
| **MICHAEL O. LEAVITT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## MEMORANDUM OPINION

Plaintiff Abbott-Northwestern Hospital ("the hospital"), a non-profit hospital in

Minneapolis, Minnesota, brings this action for declaratory and injunctive relief against the

Secretary of Health and Human Services ("the Secretary" or "HHS").  Plaintiff seeks a ruling

compelling the Secretary to compensate the hospital for Medicare fees it claims it is due for fiscal

years 1984 to 1988.  The parties have cross-moved for summary judgment.  As explained herein,

the Court grants plaintiff's motion and remands this case to the Provider Reimbursement Review

Board ("PRRB" or "the Board").

## BACKGROUND

### I.     The Statutory and Regulatory Scheme

The Medicare compensation scheme at issue in this suit has been thoroughly explained in

previous opinions.  *See, e.g.*, *Washington Hosp. Ctr. v. Bowen*, 795 F.2d 139, 141-42 (D.C. Cir.

1986); *Georgetown Univ. Hosp. v. Bowen*, 698 F. Supp. 290, 292-93 (D.D.C.), *aff'd*, 862 F.2d

323, 324-25 (D.C. Cir. 1988) ("*Georgetown II*").[1]  Prior to 1983, hospitals providing services to Medicare beneficiaries were compensated on the basis of the "reasonable costs" incurred in treating a covered patient.  42 U.S.C. § 1395f(b).  In April 1983, in order to promote greater efficiency, Congress enacted a "radically new" reimbursement scheme known as the prospective payment system ("PPS") that provided a standard reimbursement amount per patient based upon his or her diagnosis instead of paying hospitals for the actual services provided to each Medicare patient.  *See Georgetown II*, 862 F.2d at 324.  These standardized amounts are computed in advance.  *See* 42 C.F.R. §§ 412.2, 412.60-412.88; *see generally* 42 U.S.C. § 1395ww(d) (establishing compensation scheme based on diagnosis-related group prospective payment rates, also known as the "federal rate").

In recognition of the severe financial challenges that this change would pose for hospitals if implemented immediately, Congress provided for a four-year "phase-in period," from October 1983 to October 1987 (also known as the "PPS transition years"), during which hospital compensation would be based on a hybrid of the old and new approaches.  *See Georgetown II*, 862 F.2d at 324; 42 U.S.C. § 1395ww(d)(1)(C).  During those years, an increasing percentage of payments to hospitals consisted of the new federal rate, and a decreasing percentage was based not on the hospitals' actual costs during the phase-in period, but rather on their reasonable costs incurred in the fiscal year before the Medicare changes took effect, which in plaintiff's case was 1982 (the "base year").  The latter is known as the "hospital-specific rate" or the "target

---

[1] In the world of Medicare jurisprudence, the Courts' opinions are referred to as *Georgetown II* to distinguish them from an unrelated Supreme Court decision, *Georgetown Univ. Hosp. v. Bowen*, 488 U.S. 204 (1988).

amount."[2]  *See* 42 U.S.C. § 1395ww(d)(A)(i)(I), (ii)(I); *id.* § 1395ww(b)(3)(A).  Thus, a

hospital's 1982 reasonable costs assumed particular significance for hospitals because that figure

directly impacted Medicare payments not only for 1982, but also for the following four years.

The task of determining a hospital's "reasonable costs" for a given year under the earlier

Medicare scheme has been delegated by the Secretary to the Health Care Financing

Administration ("HCFA"), which since 2001 has been known as the Centers for Medicare &

Medicaid Services ("CMS").[3]  CMS in turn contracts with "fiscal intermediaries," such as Blue

Cross and Blue Shield ("BC/BS"), to administer Medicare payments, including the audits of

hospitals' reasonable costs.  42 U.S.C. § 1395h; *Georgetown II*, 862 F.2d at 324-25 & n.2.  Upon

completing such an audit, an intermediary issues a Notice of Program Reimbursement ("NPR"),

which forms the preliminary basis for determining the base year target amount and constitutes the

intermediary's "final determination."  *See* 42 C.F.R. § 405.1803; *Georgetown II*, 862 F.2d at 324.

A hospital that is "dissatisfied" with the intermediary's NPR may appeal the finding to

the PRRB within 180 days.  *See* 42 U.S.C. § 1395oo(a)(1)(A)(i), (a)(3).  Similarly, a hospital that

is dissatisfied with "a final determination of the Secretary as to the [reimbursement] amount"

may also appeal to the Board within 180 days of that decision.  *See id.* § 1395oo(a)(1)(A)(ii),

(a)(3).

---

[2] In the first year, 75 percent of a hospital's Medicare payment was based on its actual
cost base in 1982, and the federal rate comprised the remaining 25 percent.  In year two, the
hospital-specific target amount and the federal rate were weighted equally.  In year three, the
target amount percentage fell to 45 percent, and the federal rate rose to 55 percent.  In the last
year of the phase-in, the target amount was set at 25 percent, and the federal rate comprised the
remainder.  42 U.S.C. § 1395ww(d)(1)(C).

[3] For the sake of clarity, the Court will refer to this governmental body as CMS.

PRRB members are appointed by the Secretary, *id.* § 1395oo(h), and the Secretary retains the power to reverse or modify Board decisions. *Id.* § 1395oo(f)(1). Final PRRB decisions are subject to review in this Court. *Id.*

Although it is a final, administratively appealable determination, an intermediary's NPR (including any revisions made to it during the PRRB review process) is not necessarily the final word on what constitutes a hospital's target amount. In an earlier effort to rein in Medicare costs, Congress in 1972 authorized the Secretary to establish "routine cost limits" ("RCLs"), which apply to given categories of routine inpatient hospital operating costs. *See* 42 U.S.C. § 1395x(v)(1)(A), (v)(7)(B) (codifying Social Security Act Amendments of 1972, § 223, Pub. L. No. 92-603, 86 Stat. 1329, 1411 (1972)). In his implementing regulation, the Secretary provided a mechanism for making exceptions to RCLs in atypical circumstances. *See* 42 C.F.R. § 405.460(f)(1) (1982). Such RCL exception determinations are appealable to the Board. *Id.* § 405.460(c). If approved, an RCL exception typically has the effect of increasing a hospital's Medicare reimbursement amount for a given year in recognition of a hospital's atypical "actual cost[s]." *Id.* § 405.460(f)(1).

## II.    Precedents Interpreting the PPS Phase-in Scheme

Hospital reimbursement calculations during the phase-in period have been considered several times in this Circuit. In *Washington Hospital Center*, the Circuit Court deemed unlawful the Secretary's attempts to delay hospital appeals to the PRRB of intermediaries' final determinations of hospital-specific target amounts during the PPS transition years. 795 F.2d at 142. The Court held that a Secretarial ruling denying the PRRB jurisdiction over appeals prior to

an intermediary's formal issuance of a NPR was contrary to the statute's plain language, as well as the legislative intent. *Id.* at 149 (discussing 42 U.S.C. § 1395oo(a)).

Two years later, in *Georgetown II*, the Circuit again invalidated a Secretarial regulation governing the PPS transition years because it conflicted with the "most direct [statutory] language" constituting Congress' "order[]."  862 F.2d at 326.  The Secretary had ordered that during the phase-in period, any adjustments to a hospital's base year (*i.e.*, 1982) reasonable cost amounts would be effective prospectively only, notwithstanding the fact that the now-incorrect target amount had already been used during earlier phase-in years to compute a hospital's reimbursement under the hybrid scheme. *See* 42 C.F.R. § 405.474(b)(3)(i)(C)(2) (1984).  The only exception to this rule, which had the effect of denying hospitals substantial sums they would otherwise have been due under the PPS phase-in formulas, was if the earlier estimate was found to have been "unreasonable and clearly erroneous" at the time it was made by the intermediary. *See id.* § 405.474(b)(3)(ii).  The Circuit held that the plain statutory language unambiguously required that PPS transition year reimbursements be based on "*allowable* operating costs," 42 U.S.C. § 1395ww(b)(3)(A) (italics added), which in turn meant that "if the reasonable cost system would have reimbursed a hospital for a given cost, it was 'allowable' and should become a factor in determining a hospital's base year figure [*i.e.*, the target amount]." *Georgetown II*, 862 F.2d at 326.  It followed from this statutory language that PPS transition year payments *must* be retroactively adjusted to reflect any intervening changes to the target amount. *See id.* at 327 ("A final administrative or judicial decision . . . that a particular cost was, indeed, 'allowable' in the base year should provide conclusive proof that the cost should be included in the provider's [target amount] for the PPS year under appeal.") (internal quotation marks and citation omitted).

The Court rejected the Secretary's approach, since it "effectively cemented unlawful calculations into the transition year payments by largely insulating them from review." *Id.* at 328.  The Court further noted that requiring retroactive adjustments to PPS transition year payments following final administrative or judicial rulings that adjust a hospital's target amount was "not at all inconsistent with Congress' purposes in phasing in PPS that the transition payments err on the side of cushioning the economic jolt involved in the implementation of the new system." *Id.* at 329 n.13.

In 2001, the Circuit yet again rejected an effort by the Secretary to deny PPS payments to hospitals.  The Court held that, where the Secretary had changed a PPS regulation in light of its invalidation by numerous other circuits, and where intermediaries had a "clear duty . . . to reopen . . . payment determinations for the [affected] hospitals," hospitals that "have done all they can to vindicate their right of reopening" were entitled to mandamus relief in order to secure the retroactive payments they are due.  *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 814-15 (D.C. Cir. 2001).

The Circuit went further in a recent decision, holding that the equities favored granting mandamus relief to compel retroactive reimbursements to hospitals, even where those hospitals had not timely petitioned for reopening of their NPRs and had waited five years to challenge the Secretary's ruling.  *In re Medicare Reimbursement Litig.*, No. 04-5203, 2005 U.S. App. LEXIS 13118, at *13 (D.C. Cir. July 1, 2005).  The Circuit held that the Secretary's arguments in favor of preserving "important principles of finality and repose" could not prevail, particularly in light of his acknowledged legal obligations to the hospitals.  "Having to pay a sum one owes can hardly amount to an equitable reason for not requiring payment." *Id.* at *15-16.  Moreover, any

6

additional administrative burden on the Secretary to process retroactive relief in adjusting NPRs would "'not outweigh the public's substantial interest in the Secretary's following the law.'" *Id.* at *15 (quoting *In re Medicare Reimbursement Litig.*, 309 F. Supp. 2d 89, 99 (D.D.C. 2004)).

On the other hand, the Circuit has made clear that hospitals are not entitled to raise new issues on appeal from a reopening decision where they could have previously raised such arguments. Thus, "a provider's appeal of [a] reopening to the Provider Reimbursement Review Board is limited to the specific issues revisited on reopening and may not extend further to all determinations underlying the original reimbursement decision for that financial year." *HCA Health Servs. of Okla., Inc. v. Shalala*, 27 F.3d 614, 615 (D.C. Cir. 1994) ("*HCA*").

Against this backdrop, the Court will now turn to the facts of the instant case.

III.   **History of Proceedings**

In the early 1980s, Abbott-Northwestern Hospital timely sought a RCL exception to account for its atypical nursing services in fiscal year 1982. *See* 42 C.F.R. § 405.460(c) (1982) (requiring a hospital seeking an RCL exception to lodge its request within 180 days of the intermediary's issuance of a given fiscal year's NPR). On December 2, 1991, the Secretary, acting through CMS, granted the hospital's request, increasing its 1982 base year costs by $638,721. (Def.'s Ex. A at A.R. 44.) On January 6, 1992, the fiscal intermediary, BC/BS of Minnesota, issued a revised NPR for 1982 reflecting the increase. (*Id.* at A.R. 46-47.)

On April 23, 1992, the hospital wrote the fiscal intermediary to inquire when the revised 1982 target figure would be incorporated into the PPS transition year payments for 1984-1988. The hospital asked whether it needed to file a formal request to reopen the transition year

payments, and if a request to the intermediary would suffice, it asked that its letter serve as such a request. (*Id.* at A.R. 55.) On July 22, 1992, the intermediary responded that "I do not believe [42 C.F.R. §] 412.72 allows modifying the PPS base year costs under your circumstances. Therefore, we will not amend the transition period cost reports. Please contact me if you have questions. Of course, I am very willing to give consideration to any specific arguments you have regarding our position regarding PPS base year costs." (*Id.* at A.R. 57.)

An exchange of correspondence followed in which the hospital and its attorneys took up the intermediary's invitation to argue in favor of an adjustment for the phase-in period. In a December 3, 1992 letter to the intermediary, the hospital's attorney's asserted that a 1989 CMS ruling required the retroactive revision. On October 19, 1994, the intermediary rejected this specific argument, basing its conclusion on "contact" with the CMS central office, as well as its internal review of the ruling in question. "This [CMS] ruling relates to the Malpractice Rule and is not controlling in association with your approved exception for atypical nursing services. Therefore, the transition period cost reports will not be amended due to the base year cost exception. If you have any questions, please contact me . . . ." (*Id.* at A.R. 64.) On March 8, 1995, the hospital's attorney sent CMS a letter, citing *Georgetown II* and purportedly analogous circumstances in *Newport Hospital and Clinic, Inc. v. Sullivan*, No. 88-2490, 1990 U.S. Dist. LEXIS 13024 (D.D.C. Sept. 24, 1990), as authority for requiring a retroactive adjustment. (Def.'s Ex. A at A.R. 78.)

Hospital staff also continued to press the issue by letter and telephone and in meetings with the intermediary. (*See, e.g.*, *id.* at A.R. 68.) On November 25, 1997, the intermediary responded to these overtures, as well as the hospital attorney's March 1995 letter to CMS, by

stating that it had just been informed by the CMS regional office that the Secretary's "position is unchanged in that while the 1982 cost report was reopened to reflect the routine cost exception, the hospital specific rate is not revised to modify the provider's prospective payment base year or transition period cost reports.  Therefore, based on this latest response from HCFA, our position must remain the same.  If you have any new documentation that you would like us to review and would like to discuss this further, feel free to call me . . . ."  (*Id.* at A.R. 67.)

On April 13, 1998, the hospital's attorney wrote directly to Charles Booth, then Acting Deputy Director of CMS, who had signed the 1991 letter approving the hospital's RCL exception, urging him to adjust the target rate for the phase-in years as a result of the 1982 RCL exception.  The attorney stated that the Secretary's position "that the hospital specific rate was locked in by the initial PPS regulations . . . is inconsistent with the court decisions and HCFA's own rulings."  He cross-referenced the legal arguments he had made in his 1995 letter to CMS. (*Id.* at A.R. 76.)  A fax confirmation sheet dated February 1, 1999 indicates that 14 pages, including plaintiff's original 1992 letter to the intermediary requesting a transition period adjustment, was successfully sent to Mr. Booth at CMS headquarters.  (*Id.* at A.R. 89.)

In a February 9, 2001 letter to CMS Director Booth, the hospital's reimbursement director stated that she understood that CMS, as well as the hospital's "attorneys, court decisions and HCFA's own rulings" dictated that the RCL exception be applied to adjust transition year payments.  The necessary adjustment, in the hospital's view, was $1,636,565 for 1984 to 1988. She blamed the fiscal intermediary, which she understood to have only communicated with the CMS regional office, for the "break-down" in securing the reimbursement.  In light of BC/BS' recent withdrawal as fiscal intermediary for Minnesota, the hospital was seeking CMS' direct

assistance in securing the retroactive adjustment.  (*Id.* at A.R. 91.)

Email correspondence between the hospital and the agency in 2002 and 2003 indicates that CMS continued to hope to "resolve this case and had expected to do so much earlier. Unfortunately, due to a plethora of issues taking priority, we've been unable to complete our analysis."  (*Id.* at A.R. 96 (CMS email of Nov. 14, 2002).)  As of January 10, 2003, CMS reported that "[i]f everything goes as planned, we should have an answer within the next two weeks."  (*Id.* at A.R. 95.)  In response to a two further inquiries by the hospital regarding the status of the matter, the agency responded on March 11, 2003, "[I]t has not been forgotten Hopefully, soon, we will have an answer."  (*Id.* at A.R. 94-95.)

On May 13, 2003, CMS wrote the hospital in response to "the issue for which you have sought resolution" through letters to the agency and the intermediary, "as well as your e-mails, telephone calls, and informal discussions with other CMS officials and staff."  Notwithstanding both the 1999 fax confirmation sheet and several references to contact with CMS' central and regional offices in the intermediary's correspondence from 1994 forward, the agency claimed never to have known of the hospital's complaints until February 2001, when the hospital wrote directly to CMS Director Booth, whom the agency explained had by then retired and whose successor received the letter and initiated CMS' consideration of the hospital's arguments in favor of adjustment.  In the intervening twenty-seven months, CMS "thoroughly examined the issues . . . and found that your quest for closure occurred in 1992."  The Secretary found that:

> the FI [fiscal intermediary] correctly denied your request in a July 1992 letter,
> based on 42 CFR 412.72.  The regulations at 412.72(a)(3)(ii) specify that the FI
> will recalculate the provider's base year costs to account for additional costs
> recognized as allowable, but that "Adjustment to base year costs to take into
> account these additional costs -- (B) Will not be used to recalculate the hospital-

specific portion as determined for fiscal years beginning before the date of the
revision, order or finding, or review decision." It was the intermediary's decision
and while you had the opportunity to formally appeal the decision, no appeal was
filed. We understand that in 1994 and 1997, after reiterating your request to
different people at the intermediary level, the FI informed you again, that your
transition costs would not be amended and that HCFA had reaffirmed the denial.

     I apologize for the time it has taken this office to respond to your most
recent inquiries, but the Agency actually did respond in 1992. As we wrote in the
August 1, 2002 Federal Register to clarify existing policy, "Under the statute and
regulations, an 'intermediary determination' is, by definition, a 'final
determination' of program reimbursement." Accordingly, the 1992 [hospital-
specific rate] cannot be revised. Furthermore, even if the [hospital-specific rate]
could be revised, the subsequent year cost reports would have to be reopened in
order to "pay" Abbott-Northwestern. The three-year time limit to reopen those
cost reports has expired. We regret that our response cannot be more favorable.

(*Id.* at A.R. 99-100.)

On October 9, 2003, the hospital appealed CMS' May 2003 letter to the PRRB. (*Id.* at

A.R. 34-42.) The fiscal intermediary challenged the Board's jurisdiction over the hospital's

appeal on the grounds that the May 13 CMS letter was not a "final determination" subject to

Board review. (*Id.* at A.R. 25.)

The PRRB rendered its decision on March 15, 2004. The Board found that it lacked

jurisdiction because the hospital had not appealed from a "final determination" within the

meaning of 42 U.S.C. § 1395oo(a) and 42 C.F.R. §§ 405.1835 and 405.1841. The Board stated

that the May 2003 CMS letter did not include the indicia of a final determination, namely "the

total amount of reimbursement due and [an] expla[nation of] any difference in the amount

determined to be due and the amount received by the provider and [a] notice of appeal rights."

(*Id.* at A.R. 2 (citing 42 C.F.R. § 405.1801(a) and *Newport Hosp.*, 1990 U.S. Dist. LEXIS

13024).) The Board went on to "note[] that the Provider could have appealed the issue of

whether its PPS base year costs should be increased as the result of the approval of the RCL

exception request when HCFA granted the request for an RCL exception." (*Id.*) The PRRB dismissed plaintiff's appeal, and this suit followed.

## ANALYSIS

The parties have cross-moved for summary judgment.  Defendant contends that the Court lacks jurisdiction over plaintiff's suit.  In response, plaintiff argues that the Court's jurisdiction may be based on any of three grounds:  1) pursuant to 42 U.S.C. § 1395oo(f) in order to review the PRRB's dismissal of the hospital's appeal; 2) as a federal question, pursuant to 28 U.S.C. § 1331, notwithstanding the jurisdictional preclusion provision of 42 U.S.C. § 405, *see Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000) ("*Illinois Council*"); or 3) as a mandamus action under 28 U.S.C. § 1361.  Plaintiff seeks declaratory and injunctive relief, including an order compelling the Secretary to revise promptly the 1984 to 1988 NPRs to reflect the RCL exception adjustment to the hospital's base year costs.  Alternatively, plaintiff seeks an order decreeing that CMS' May 13, 2003 letter was a "final determination" affecting the hospital's 1984 to 1988 cost reports and remanding to the PRRB for further proceedings.

## I.       Standard of Review

In reviewing the Board's decision, the Court is limited to the record before the agency, *see Camp v. Pitts*, 411 U.S. 138, 142 (1973), and the Administrative Procedure Act's familiar arbitrary and capricious standard of review must be applied.  *See* 42 U.S.C. § 1395oo(f)(1) (incorporating standards of 5 U.S.C. § 706).  The Court may only consider the reasons relied upon by the Board and may not consider *post hoc* rationalizations by government counsel.  *See,*

*e.g.*, *Chamber of Commerce of the United States v. SEC*, No. 04-1300, 2005 U.S. App. LEXIS

11805, at *25 (D.C. Cir. June 21, 2005); *Biloxi Reg'l Med. Ctr. v. Bowen*, 835 F.2d 345, 348

n.12, 351 n.18 (D.C. Cir. 1987) ("the PRRB did not itself rely on this factor so it cannot properly

be urged in support of the PRRB's decision").


## II.        The PRRB Incorrectly Determined That It Lacked Jurisdiction

The sole issue presented here is whether the PRRB had jurisdiction over plaintiff's claim

for reimbursement for fees relating to the years 1984-1988.  Because the Court concludes that the

Secretary's May 2003 ruling on plaintiff's claim constituted "a final determination" subject to the

Social Security Act's review provisions, 42 U.S.C. § 1395oo, it concludes that the PRRB was in

error when it decided that it lacked jurisdiction.[4]

The relevant statutory provisions provide that:

> Any provider of services which has filed a required cost report within the
> time specified in regulations may obtain a hearing with respect to such cost report
> by a Provider Reimbursement Review Board . . . [and] any hospital which
> receives payments in amounts computed under subsection (b) or (d) of section
> 1395ww of this title and which has submitted such reports within such time as the
> Secretary may require in order to make payment under such section may obtain a
> hearing with respect to such payment by the Board, if--
>   (1) such provider--
>     (A) (i) is dissatisfied with a final determination of the organization serving as
> its fiscal intermediary pursuant to section 1395h of this title as to the amount of
> total program reimbursement due the provider for the items and services furnished
> to individuals for which payment may be made under this subchapter for the
> period covered by such report, or
>         (ii) is dissatisfied with a final determination of the Secretary as to the
> amount of the payment under subsection (b) or (d) of section 1395ww of this title.

42 U.S.C. § 1395oo(a).

---

[4] Given the Court's resolution of this issue, it need not address plaintiff's alternative
arguments based on federal question jurisdiction and mandamus.

13

In *Washington Hospital Center*, the Circuit held that this statute creates two different types of decisions that may be appealed: those of the intermediary, which ordinarily come in the form of a NPR, and those of the Secretary concerning hospitals' target amounts (§ 1395ww(b)) and PPS payments (§ 1395ww(d)).  *See* 795 F.2d at 145 & n.6.  In terms of review of Secretarial determinations, "hospitals are entitled to review only when PPS payment amounts have been *finally* determined within the meaning of 42 U.S.C. § 1395oo(a)(1)(A)(ii)."  *Id.* at 145 n.7 (emphasis in original).  The Circuit further held that, once the target amount had been set, it was appealable, notwithstanding the Secretary's attempts to delay such review with regulatory hurdles that conflicted with the statute's plain language.  *See id.* at 147-48 & nn.9-10 ("There has been no implicit delegation of authority to the Secretary to interpret the review provision.").  Thus, appeal of a Secretary's determinations under § 1395oo(a)(1)(A)(ii) provides an alternative route to the PRRB, even where the particularities of the fiscal intermediary decisionmaking process might not afford immediate relief pursuant to § 1395oo(a)(1)(A)(i).

**A.**       **The May 2003 letter unequivocally set the hospital's 1984-1988 payment structure, and was thus a "final determination of the Secretary"**

The Secretary's May 2003 letter constitutes a "final determination of the Secretary as to the amount of the payment," 42 U.S.C. § 1395oo(a)(1)(A)(ii), since the letter states unequivocally that "the 1992 [hospital-specific rate] cannot be revised.  Furthermore, even if the [hospital-specific rate] could be revised, the subsequent year cost reports would have to be reopened in order to 'pay' Abbott-Northwestern.  The three-year time limit to reopen those cost reports has expired.  We regret that our response cannot be more favorable."  (Def.'s Ex. A at A.R. 99-100.)  Thus, this letter did not suggest that the decision would be revisited, and it

established definitively that the amount of the 1984-1988 payments would not be retroactively

adjusted to reflect the modification of the target rate that had resulted from the approval of

plaintiff's RCL exception. *Compare Newport Hosp.*, 1990 U.S. Dist. LEXIS 13024, at *14

("There is no reason why Newport, upon receiving these communications, would be

unreasonable in expecting further agency consideration to follow.").  As such, the 2003 letter

falls squarely within the appeals process set forth in § 1395(a)(1)(A)(ii) that the Circuit relied on

for jurisdiction in *Washington Hospital Center.*

     This result is consistent with *Sunshine Health Sys., Inc. v. Bowen*, 809 F.2d 1390, 1396

(9th Cir. 1987), in which the court, relying on *Washington Hospital Center*, found a Secretary's

letter to be appealable under § 1395oo(a)(1)(A)(ii) where it granted an RCL exception and

thereby guaranteed a basis for calculating the amount of payment that the hospital would receive,

even if the letter did not specifically set forth any particular payment amounts.  Similarly, here

the Secretary's letter guaranteed that HHS would not retroactively adjust plaintiff's 1984 to 1988

NPRs as a result of the 1982 RCL exception.  This directly affected the amount of reimbursement

Abbott-Northwestern would receive.  *Accord Monmouth Med. Ctr.*, 257 F.3d at 811 (Board

jurisdiction lies where the Secretary resolves "the only variable factor in the final determination

as to the amount of payment," namely the target amount, "thereby fixing [the hospitals'] payment

amounts under the PPS" (internal quotation marks and citation omitted)).  Accordingly, the 2003

CMS letter was appealable to the PRRB, and this Court, in turn, likewise has jurisdiction.  *See* 42

U.S.C. § 1395oo(f)(1).

     The Secretary, however, attacks this conclusion with three distinct arguments.  First, he

contends that the letter cannot be a final determination because it does not meet certain

regulatory requirements.  Second, he points to other appeal routes that the hospital purportedly should have pursued in order to seek relief, thereby implicitly precluding designation of the May 2003 letter as an appealable final determination.  Third, he maintains that the letter was an unappealable denial of a discretionary reopening request.  None of these arguments has merit.

### B.   *The Secretary's regulations do not preclude PRRB jurisdiction over the letter*

The Secretary argues that this letter does not constitute a "final determination" because it lacks the indicia required by regulation for appeal of an *intermediary's* final determination to the Board.  (Def.'s Mot. at 25.)  As ruled by the Board:

> [a] final determination is defined as a "determination of the total reimbursement due the provider . . . for items and services furnished to Medicare beneficiaries for which reimbursement may be made."  42 C.F.R. § 405.1801(a).  Section 405.1803 of the regulation goes on to explain that a final determination should include the total amount of reimbursement due and explain any difference in the amount determined to be due and the amount received by the provider and give notice of appeal rights.  *See also Newport Hospital*, 1990 U.S. Dist. LEXIS 13024 (D.D.C. 1990).  The Board concludes that CMS' May 13, 2003 letter did not contain any of the elements of a final determination.

(Def.'s Ex. A at A.R. 2.)

Reliance on this regulation was in error.  The pertinent part of the regulation quoted by the Board reads in full:

> *Intermediary determination* means the following:  (1) With respect to a provider of services that has filed a cost report under §§ 413.20 and 413.24(f) of this chapter, the term means a determination of the amount of total reimbursement due the provider, pursuant to § 405.1803 following the close of the provider's cost reporting period, for items and services furnished to beneficiaries for which reimbursement may be made on a reasonable cost basis under Medicare for the period covered by the cost report.

42 C.F.R. § 405.1801(a) (emphasis in original).  As already explained, the cost report filed by the hospital for the 1982 cost year was submitted nearly a decade prior to the Secretary's granting of

the RCL exception and subsequent issuance of a new 1982 NPR.  Thus, by its plain terms, this provision is inapplicable, for the NPR was not issued pursuant to a "cost report" filed by the hospital, but rather came as a result of the Secretary's independent RCL exception approval process.

Second, this regulatory definition, which incorporates by reference the requirements for NPRs set forth in 42 C.F.R. § 405.1803, explicitly applies only to "intermediary determinations," whereas the CMS 2003 letter is a determination of the Secretary.  The Board did not acknowledge these differences between review of Secretarial and intermediary decisions, but rather, contrary to *Washington Hospital Center*, it improperly read the limits on review of intermediary determinations pursuant to 42 U.S.C. § 1395oo(a)(1)(A)(i) to apply as well to its review of Secretarial decisions pursuant to § 1395oo(a)(1)(A)(ii).

Nonetheless, the Secretary now offers a belated explanation for the Board's conflation of the requirements for judicial review under the two paths prescribed by 42 U.S.C. § 1395oo(a)(1)(A).  The Court's role is to review those factors relied upon by the PRRB in its decision, *see Biloxi Reg'l Med. Ctr.*, 835 F.2d at 348 n.12, 351 n.18, not to base its decision on *post hoc* arguments advanced for the first time by litigation counsel.  But even if the Court were to reach the Secretary's argument, it would be rejected.  His position appears to be that a Secretarial determination is only appealable if it meets the definition of an intermediary determination.  (*See* Def.'s Reply at 17; Def.'s Mot. to Amend Reply at 9 & n.8 ("the same regulatory appeal procedures used to review an intermediary's final determination of the total amount of Medicare payment [also apply] to reviews of 'final determination[s] of the

Secretary'".).)[5]  This is contrary to law.

It is true that 42 C.F.R. § 405.1801(a)(3) provides that "[f]or purposes of appeal to the

Provider Reimbursement Review Board, the term [intermediary determination] is synonymous

with the phrases 'intermediary's final determination' and 'final determination of the Secretary',

as those phrases are used in section 1878(a) of the Act [42 U.S.C. § 1395oo(a)]."  But the fact

that the term is synonymous with the phrase used in the statute does not, in turn, mean that the

statutory term "final determination of the Secretary" has no meaning *unless* it contains the same

indicia of finality that the regulation requires for an "intermediary determination."  Moreover,

contrary to well established principles, equating a "Secretarial determination" with an

"intermediary determination" would render § 1395oo(a)(1)(A)(ii) mere surplusage.  *See Qi-Zhuo*

*v. Meissner*, 70 F.3d 136, 139 (D.C. Cir. 1995) ("all words in a statute are to be assigned

meaning, and . . . nothing therein is to be construed as surplusage").  Further, the implausibility

of the Secretary's construction shows, of course, that the regulation merely means what it says:

an intermediary determination that contains the types of notice dictated in § 405.1803 is but part

of a subset of determinations that constitute a final determination of the Secretary or an

intermediary within the meaning of 42 U.S.C. § 1395oo(a),[6] and the universe of appealable final

---

[5] The regulation the Secretary cites for this proposition does not concern "procedures," as
defendant contends, but rather *defines* what is an appealable intermediary determination for
purposes of 42 U.S.C. § 1395oo(a).  *See* 42 C.F.R. § 405.1801(a)(3) ("*Definitions*").

[6] The Board cited *Newport Hospital* as an example of what is required for a letter to be
deemed an appealable final determination.  But that decision plainly does not establish, as the
PRRB apparently believed, a definitive list of criteria for identifying what constitutes a final
determination, but rather merely illustrates several factors that render a letter so obviously a final
determination so as to preclude a plaintiff from raising the same issue later if he did not appeal
from the earlier letter.  Thus, *Newport Hospital* does not prevent this Court's identification of the
May 2003 letter as a final determination for purposes of 42 U.S.C. § 1395oo(a)(1)(A)(ii).  *See*

Secretarial determinations is certainly not limited to those set forth in § 405.1803.

Finally, the reading proposed by the Secretary contradicts the Circuit's holding in *Washington Hospital Center* by unlawfully placing restrictions on a review provision that is clear on its face. *See* 795 F.2d at 147 & n.10 (Congress unlikely to delegate authority to agency to restrict "rights of access to challenge or obtain judicial review of agency rulings"). Further, the Secretary cites no formal or informal agency pronouncement restricting Board review to Secretarial determinations that conform to 42 C.F.R. § 405.1803, and thus, no deference is to be accorded his interpretation. *See Carus Chem. Co. v. EPA*, 395 F.3d 434, 439 (D.C. Cir. 2005); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988) (court owes no "deference to an agency counsel's interpretation of a statute where the agency itself has articulated no position on the question"); *Public Citizen, Inc. v. HHS*, 332 F.3d 654, 661-62 (D.C. Cir. 2003) (citing *United States v. Mead Corp.*, 533 U.S. 218, 221 (2001); *Christensen v. Harris County*, 529 U.S. 576, 587 (2000)) ("respect" for informal agency decisions limited to their "power to persuade").[7]

Accordingly, the Court finds that agency regulations do not preclude designating the May 2003 CMS letter as a "final determination of the Secretary."

---

1990 U.S. Dist. LEXIS 13024, at *15 (noting that "ideally" final determinations should include certain statements, and "it would not be unreasonable to require" their inclusion).

[7] The alternative reading proposed by the Secretary would also pose serious due process concerns by potentially insulating from review Secretarial determinations that do not strictly conform to the regulation's detailed provisions relating to intermediary determinations. Such a construction must be avoided, and would at the least require consideration of such extraordinary jurisdictional vehicles as mandamus review and 28 U.S.C. § 1331 / *Illinois Council*-type jurisdiction. *See In re Grand Jury Subpoena of Miller*, 396 F.3d 964, 977 n.2 (D.C. Cir. 2005) (describing constitutional avoidance doctrine).

### C.    The alternative appeal routes identified by the Secretary are illusory

In addition to his unjustifiably restrictive reading of what constitutes a final determination by the Secretary, defendant has offered a variety of theories as to how plaintiff should have, in lieu of the instant suit, pursued its claim.  However, each of these proposals fails, and this collective failure reinforces the conclusion that plaintiff properly appealed from the May 2003 CMS letter, which was the first and final determination by the Secretary regarding the applicability of the RCL exception to the PPS transition years.

In his May 2003 letter, the Secretary offered his first proposal for how the hospital should have challenged the retroactive adjustment refusal, stating that the hospital erred in failing to appeal the intermediary's July 1992 letter.  (Def.'s Ex. A at A.R. 99 ("It was the intermediary's decision and while you had the opportunity to formally appeal the decision, no appeal was filed.").)  However, that 1992 letter was not a "final determination" of the intermediary, for it explicitly opened the door to further consideration of the question.  (*See id.* at A.R. 57 ("Of course, I am very willing to give consideration to any specific arguments you have regarding our position regarding PPS base year costs.").)

Ambiguous letters that "could be so easily interpreted as part of an informal and ongoing process" should not be deemed to constitute final decisions.  *Newport Hosp.*, 1990 U.S. Dist. LEXIS 13024, at *14.  In such cases, the recipient of the communication "would [not] be unreasonable in expecting further agency consideration to follow. . . .  It is unreasonable to expect a party undergoing administrative proceedings by means of what more closely resemble informal letters than formal decisions to be able to identify which letters constitute final determinations and which do not."  *Id.*  Moreover, precluding judicial review based upon

ambiguous letters retroactively determined to be "final decisions" raises constitutional questions, and such a result must be avoided where possible.  Therefore, the *Newport Hospital* Court read a CMS letter as non-final in order to avoid "questions of due process."  *Id.* at *15-16.

Similarly, this Court found that the ambiguous statement "'it appears that the former owners must be held responsible,' by no means conveys a tone of finality."  *Beverly Enterprises v. Califano*, 460 F. Supp. 830, 834 (D.D.C. 1978).  Finality was further undermined by the letter's request for "any further thoughts as to responsibility for these overpayments," *id.* at 834 n.2, which suggested that, although a preliminary determination had been made, the ultimate outcome remained subject to change.

Likewise, plaintiff was not given reasonable notice in the intermediary's 1992 letter that it was an appealable final determination covering the 1984 to 1988 retroactive adjustments, since it explicitly invites further discussion.  Accordingly, the Secretary's first theory for how the hospital could conceivably have petitioned for retroactive readjustments following the 1992 NPR revision fails.

The Secretary's second theory, presented in the PRRB's March 2004 decision, is equally flawed.  The Board maintained that the hospital "could have appealed the issue of whether its PPS base year costs should be increased as the result of the approval of the RCL exception request when HCFA granted the request for an RCL exception."  (Def.'s Ex. A at A.R. 2.) However, a statutory prerequisite for appealing a final determination is "dissatisf[action]" with the payment amount authorized under the challenged action.  *See* 42 U.S.C. § 1395oo(a)(1)(A).

As the hospital was completely satisfied with the granting of the RCL exception for 1982 and the 1982 NPR revision, and because neither of those determinations, by their own terms,

21

considered cost reports from 1984 to 1988, plaintiff could not use either of those determinations as a basis for raising the instant claim relating to the PPS transition years.  *See Athens Cmty. Hosp., Inc. v. Schweiker*, 743 F.2d 1, 6, 8-9 (D.C. Cir. 1984) (PRRB lacks jurisdiction over issues unless they were considered by the intermediary in the underlying determination).  In light of this fundamental error in the Board's decision, it is not entitled to deference.  *See GTE Serv. Corp. v. FCC*, 205 F.3d 416, 421 (D.C. Cir. 2000) (rejecting agency interpretation that "diverge[s] from any realistic meaning of the statute").

Finally, the Secretary now raises a third, and belated, argument not previously advanced during the administrative process.  Again, the Court may not base its decision on litigation counsel's *post hoc* arguments, but even if it were to reach the Secretary's argument, it merely serves to illustrate that plaintiff lacked any established means of appealing the Secretary's failure to adjust the hospital's PPS transition year payments.

Defendant claims that plaintiff should have argued in its appeals of the 1984-1988 NPRs that it was "dissatisfied" with the total amount it was compensated for those years, even though its RCL exception was not granted until December 1991.  (Def.'s Mot. at 30-32.)  But, as evidenced by the Secretary's issuance of a new NPR for 1982 as a result of the approval of the RCL exception, the RCL exception consideration process is discrete from the normal PPS NPR evaluation process, and these two schemes can be reconciled only by revising earlier PPS NPRs *after* a judgment has been made on a RCL exception petition.  (*See* Def.'s Mot. to Amend Reply at 8 n.7 (characterizing the 1992 revision of the 1982 NPR as "not a reopening, but a special determination in its own right").)  Further, Medicare reimbursement decisions, both for RCLs and for overall NPRs, operate at a slow pace, with decisions often being rendered years after the

fiscal years in question.  (*See, e.g.*, Def.'s Ex. A at A.R. 33 (showing that NPRs for the hospital

were issued as follows for the given fiscal years: 1984 - NPR on 2/28/86; 1985 - NPR on

10/1/87; 1986 - NPR on 2/1/89; 1987 - NPR on 9/28/90; 1988 - NPR on 9/26/91).)  And because

these decisionmaking processes are distinct, it is possible for an NPR decision, which relies on

the Secretary's reasonable cost determinations as of the time of NPR issuance, to precede a RCL

exception finding that later adjusts the applicable base year's "allowable" costs.  Thus, plaintiff

"could not have known of [its phase-in year] injury until CMS rejected its request for an increase

to the [hospital-specific rate] for the transition years" following Secretarial approval of the base

year RCL exception in 1991.  (*See id.* at A.R. 2 (PRRB decision explaining plaintiff's arguments

below).)

Therefore, none of the 1984-1988 NPRs could have been appealed for failure to include

RCL exceptions that had not yet been identified by the Secretary, and plaintiff's appeals of those

NPRs could likewise not be amended to include such claims.  When the hospital first submitted

its phase-in year cost reports for the Secretary to determine its NPR amount, such reports

necessarily could not include exceptional 1982 costs that CMS had not yet approved.  Therefore,

the fiscal intermediary could not have considered such abnormal costs when it first issued the

hospital's transition year NPRs.[8]  *See* 42 C.F.R. § 405.1803(a)(1)(i) (requiring that NPRs be

calculated "on the basis of reasonable cost for the reporting period covered by the cost report").

In turn, the Board would have lacked jurisdiction over any appeal contending that the NPRs were

flawed for failing to include unapproved exceptions to the RCLs.  *See Athens Cmty. Hosp.*, 743

---

[8] Every phase-in year NPR was issued prior to approval of the RCL exception.  For
instance, the 1988 NPR, covering the final PPS transition year, was issued on Sept. 26, 1991, and
the RCL exception was granted on Dec. 2, 1991.  (*See* Def.'s Ex. A at A.R. 33, 44.)

F.2d at 6 (limiting PRRB jurisdiction to those issues raised in the hospital's cost report that informed the intermediary's final determination) (construing 42 U.S.C. § 1395oo(d) *in pari materia* with § 1395oo(a)).  In short, plaintiff could not argue the RCL exception issue either in its original appeals of the transition year NPRs or by amending those appeals after the Secretary's 1991 approval of the exception.[9/]

In any event, at least some of the hospital's transition year NPR appeals had been finalized prior to the Secretary's approval of the RCL exception in 1991, and therefore amendment was not possible.  (*See, e.g.*, Def.'s Ex. B (Bloom Decl.) at 3 ¶ 5 (indicating that 1984 NPR appeal was withdrawn on April 21, 1988).)  Defendant's further suggestion that plaintiff could have indefinitely stayed its applicable NPR appeals as it awaited the Secretary's eventual RCL exception ruling is impractical and would have denied the hospital, as well as the Secretary, finality for the indeterminate future.  (*See, e.g.*, Def.'s Reply at 19-20.)

Accordingly, defendant's third approach must be rejected, for the hospital could not have properly raised the non-inclusion of the RCL exception in the target amount in its appeals of the 1984-1988 NPRs.  Moreover, the fallacies in each of the Secretary's three theories for how plaintiff should have raised its claim earlier further bolsters the conclusion that prior to the 2003

---

[9/] Indeed, the Secretary concedes that in this very case, "the Board dismissed the portion of plaintiff's administrative appeal of the NPR for its 1982 base year that 'relate[d] to a request for exception to the routine cost limitation under the [then-effective] provisions of 42 C.F.R. § 405.460(f).'"  (Def.'s Reply at 20 n.14.)  Thus, if the hospital could not appeal the RCL exception issue as to the year for which it was directly applicable, it is nonsensical to suggest that plaintiff could nonetheless have successfully pressed the same 1982 issue as to the transition years 1984-1988.  Further, the Secretary's argument that the reasons for the Board's dismissal of the RCL exception appeal in the 1982 NPR proceeding would not have doomed subsequent years' appeals simply ignores the jurisdiction preclusion holding of *Athens Community Hospital. See* 743 F.2d at 6.

CMS letter there had been no final determination regarding the Secretary's willingness to adjust the 1984-1988 NPRs following the approval of the RCL exception.[10/]  Thus, the hospital had no choice but to wait for an unequivocal final determination from the Secretary before it could challenge the lawfulness of his actions.[11/]

### D.  A formal reopening petition was unnecessary in light of Georgetown II

The Secretary further argues that the May 2003 CMS letter is not reviewable because it was merely a denial of reopening.  (*See* Def.'s Mot. at 23, 28-29; Def.'s Reply at 11; Def.'s Mot. to Amend at 12 n.11.)  Pursuant to 42 C.F.R. § 405.1885(a), a reopening request must be lodged within three years of the Board or intermediary hearing, or the issuance of the applicable NPR, and the decision whether to grant a reopening request is committed to the agency's discretion and as such is not reviewable.  *See Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 457 (1999) ("*Your Home*").

The Secretary's argument fails, because in light of *Georgetown II*, once he had adjusted the hospital's 1982 NPR, he had a duty to revise plaintiff's 1984-1988 NPRs, and no reopening request was required.  *Georgetown II* was well-settled law by January 1992, when the

---

[10/] Even if the Secretary were correct that plaintiff had earlier opportunities to appeal applicable final determinations, this would not preclude a finding that the CMS 2003 letter was an appealable final determination, for multiple determinations may be deemed final for purposes of appeal.  *See, e.g.*, *HCA*, 27 F.3d at 617.

[11/] Nor can defendant be heard to complain that the hospital followed an "'administrative process' that plaintiff simply made up as it went along" (Def.'s Reply at 18), given the lack of an established administrative mechanism for addressing plaintiff's claims.  *See Gen. Elec. Co. v. EPA*, 53 F.3d 1324, 1330, 1333-34 (D.C. Cir. 1995) ("Where, as here, the regulations and other policy statements are unclear, where the petitioner's interpretation is reasonable, and where the agency itself struggles to provide a definitive reading of the regulatory requirements, a regulated party is not 'on notice' of the agency's ultimate interpretation of the regulations, and may not be punished.").

intermediary adjusted plaintiff's 1982 NPR.  It clearly required "the Secretary to recompute the

target amount component of the prospective payment rates of [hospitals obtaining a final order in

their favor] to conform with final judgments that these rates were initially calculated on the basis

of invalid legal assumptions."  862 F.2d at 330, 326 n.8.  The RCL exception and the resultant

revised 1982 NPR constituted such a "final ruling on allowable costs [that] . . . [came] only after

extensive administrative and/or judicial review."  *Id.* at 326.  This ruling "that a particular cost

was, indeed, 'allowable' in the base year should provide conclusive proof that the cost should be

included in the provider's [hospital-specific amount] for the PPS year under appeal."[12]  *Id.* at 327

(internal quotations marks and citation omitted).  In short, as a result of the issuance of the

revised NPR in 1992, the hospital's base year "allowable operating costs" had been finally

revised, and the Secretary was obligated by Circuit precedent to revise the phase-in years'

payments.[13]

---

[12] Defendant's contention that the Circuit's holding only applies to "payment amounts for transition years that were properly 'under appeal'" misreads *Georgetown II.*  (*See* Def.'s Reply at 22-23.)  "Under appeal" refers simply to the procedural posture there at issue.  The reasoning of the opinion plainly applies to all final adjustments to "allowable operating costs," 42 U.S.C. § 1395ww(b)(3)(A), that in turn affect PPS transition year payments.  The Circuit referred to an ongoing duty to make such adjustments in light of "administrative and/or judicial review . . . [that] would inevitably inform the content of any definition of the term 'allowable.'" 862 F.32d at 326-27.  The statutory analysis that the Circuit applied in construing "allowable" costs as a moving target applies equally to both the invalidated regulations at issue in *Georgetown II*, *see id.* at 325, and to RCL exceptions that likewise force an adjustment to the base year figures used to compute the target amount for the PPS transition years.  *See also In re Medicare Reimbursement Litig.*, 2005 U.S. App. LEXIS 13118, at *9-10 (holding that failure to appeal from an NPR does not preclude relief, and a reopening petition is not required, where the NPR is subsequently shown to rely on an invalid regulation).

[13] The Secretary makes much of the initial denial of plaintiff's RCL exception request, followed by a multi-year delay before the hospital submitted the additional documentation the Secretary had requested in order to reconsider his initial decision.  (Def.'s Mot. at 20-21.) Whatever the cause of this and the numerous other delays in this decades-old dispute, the fact

The Secretary endeavors to evade this duty by suggesting that his regulations exempted RCL exceptions from such retroactive changes.  (*See* Def.'s Mot. at 18-19.)  This argument is beside the point.  There can be no doubt, in light of the revision of the 1982 NPR, that the allowable costs for the base year had changed.[14]  *Georgetown II* and the statutory language on which it relies are unequivocal.  *See* 862 F.2d at 326-27; *see also* 698 F. Supp. at 296 ("The plain language of the statute therefore provides that costs that are 'allowable' for a hospital's base year *must* be included in the calculation of that hospital's 'target amount.'" (italics added)).  The Secretary's failure to promulgate a regulation to operationalize the law does not entitle him to circumvent his legal obligation.[15]  *See In re Medicare Reimbursement Litig.*, 2005 U.S. App.

---

remains that in 1991 the Secretary granted plaintiff's exception request, and, acting through his intermediary, in 1992 he issued a new 1982 NPR that revised plaintiff's target amount for the base year, which decision gave rise to the Secretary's retroactive adjustment duty.  *See Georgetown II*, 862 F.2d at 326-27.  Therefore, assigning blame for the delay has no irrelevance.

[14] Thus, the Secretary's argument that RCL exceptions were *sui generis* (*see* Def.'s Mot. at 18, 40 & n.25; Def.'s Reply at 23) as indicated by their non-inclusion in various regulations governing base year cost adjustments is not relevant to the issue of whether the hospital's 1982 allowable costs had been legally changed.  The intermediary adjusted plaintiff's NPR, which for purposes of *Georgetown II* constitutes a final order governing the hospital's allowable costs for the 1982 base year.  In any event, the Secretary's attempt to read *Georgetown II* so narrowly as to exclude routine cost limit adjustments from the statutory term "allowable operating costs" ignores both the plain meaning of the Circuit's opinion, as well as the non-ambiguous statute that it construed.  *See* 862 F.2d at 326 & n.9 (holding that Congress' intent regarding the applicable statute is clear).  In sum, the Secretary necessarily deemed "allowable" plaintiff's exceptional nursing operating costs when he in 1991 approved the 1982 RCL exception and in 1992 adjusted the base year NPR.

[15] In light of the Secretary's duty under *Georgetown II*, even if there had been no final determination, the hospital could make a strong mandamus argument to compel defendant to act.  *See In re Medicare Reimbursement Litig.*, 2005 U.S. App. LEXIS 13118, at *12 (affirming grant of mandamus relief in favor of hospitals notwithstanding their failure to petition for reopening, pursuant to 42 C.F.R. § 405.1885, for retroactive adjustments to NPRs that had been calculated on the basis of an invalid regulation).

LEXIS 13118, at *15 (the Secretary's administrative "burden [would] not outweigh the public's substantial interest in the Secretary's following the law").  And, the Secretary is powerless to construe his regulations so as to circumvent *Georgetown II*'s ruling, for in construing the applicable provision of the Social Security Act, the Circuit explicitly found a lack of statutory ambiguity and held that "the intent of Congress is clear."  *See Georgetown II*, 862 F.2d at 326 (relying on step one of the analysis set forth in *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842 (1984)).  *See also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 2005 U.S. LEXIS 5018, at *29 (U.S. June 27, 2005) ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion.").

Therefore, defendant cannot equate the Secretary's May 13, 2003 letter with a denial of a request to reopen under 42 C.F.R. § 405.1885.  This approach -- which would force a prevailing hospital to seek relief via a fundamentally discretionary reopening process, *Your Home*, 525 U.S. at 457, where appeal is only possible from those narrow issues actually reopened, *HCA*, 27 F.3d at 620 -- flies in the face of *Georgetown II* and the Secretary's independent duty to revise the hospital's target amount due to the upward adjustment of the 1982 NPR.[16]  Indeed, this Circuit has distinguished discretionary reopening decisions from other "final determination[s] of the Secretary" like the one at issue here, which remain appealable to the Board.  *See HCA*, 27 F.3d at 619 n.3 (distinguishing 42 U.S.C. § 1395oo(a)(1)(A)(ii) proceedings and citing *Georgetown II*'s

---

[16] Moreover, the three-year statute of limitations applicable to reopening requests, *see* 42 C.F.R. § 405.1885, would deny relief to parties that secure a final order outside the time window notwithstanding their success on the merits.

predecessor, *Washington Hosp. Ctr.*, 795 F.2d 139, as binding authority governing such review).

In sum, defendant's final theory that the PRRB lacked jurisdiction over the May 2003 letter because it was nothing more than a denial of a reopening request fares no better than his other arguments. Therefore, the Court concludes that the Board erred in its conclusion that the Secretary's May 2003 letter was not an appealable "final determination" pursuant to 42 U.S.C. § 1395oo(a)(1)(A)(ii).[17/]

## CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied. Defendant's motion to amend its answer is granted. The case is remanded to the Provider Reimbursement Review Board for further proceedings consistent with this Memorandum Opinion.

---

[17/] Defendant has moved to amend its answer to explicitly include a statute of limitations defense to plaintiff's claim for mandamus relief pursuant to 28 U.S.C. § 1361. Since the Court does not reach plaintiff's alternative mandamus argument, such an amendment will be denied as moot.